Hawkins, J.,
delivered the opinion of the Court.
On the 12th of August, 1865, Keller instituted this suit in the Circuit Court of Greene County, against the plaintiffs in error, upon the following instrument:
*259 “$471.79. One day after date, we promise to pay Samuel Keller, four hundred and seventy-one dollars and seventy-nine cents, being for notes received this day, in current bank notes. Oct. 81, 1860.
McDowell, McGatjghey & Co.”
The declaration is, substantially, in the concise form prescribed by the Code.
The defendants filed two pleas. The second is a plea of tender, in which it is averred, that, after the time when said sum of four hundred and seventy-one dollars and seventy-nine cents, became due and payable, and before the commencement of this suit — to-wit, on the 18th day of December, 1862 — the defendants, by their lawfully authorized agent, tendered and offered to pay said plaintiffs said sum, with all lawful interest thereon, in current bank notes, to:wit: the sum of $534, which the plaintiff wholly refused to receive. The plea further avers, that, on the said 13th of December, 1862, the defendants deposited with one George Jones, the sum of $534.00, in current bank notes, with which to pay said notes, with interest thereon, with directions to pay the same to the plaintiff, whenever he would receive the same in payment of said note, of which the plaintiff then and there had due notice; and that, although said Jones has ever since held said sum ready to pay said plaintiff’, yet .the plaintiff has wholly failed and refused to receive the same.
The defendants further aver in said plea, that, at the time they made said tender, to-wit: on the 13th of December, 1862, the plaintiff made no objection, what *260 ever, to the current bank notes tendered, but simply-declared that he had no use for money at that time; and they further aver, they now bring into Court the identical bank notes so tendered, and at all times kept in readiness, and willing to pay the said plaintiff the full amount lawfully due upon said note.
The plaintiff took issue upon the first plea, and de.murred to the second — assigning the following causes of demurrer, to-wit: 1st, The plea fails to aver the tender was made on the day the instrument sued on fell due; but does aver the tender was made a long time after the same was due and payable.
2d, The plea fails to aver that the defendants were always ready, from the day when said instrument fell due, to pay the same.
Other steps were taken in making up the pleadings in the cause, which it is unnecessary to notice. The demurrer of the plaintiff to the plea of tender filed by the defendants, was allowed, upon argument thereof, and the defendants declining to file any further plea; therefore, for want of a plea, as appears from the record, a judgment by default was pronounced against the defendants ; but, because it was unknown to the Court what damages the plaintiff had sustained, a jury was impaneled to inquire thereof, who rendered a verdict in favor of the plaintiff, for $636.16, principle and interest on said note, after deducting one per cent. The defendants moved for a new trial, which was refused, and judgment pronounced upon the verdict; to reverse which the defendants have appealed in error to this Court.
*261 It is insisted, the Court erred in allowing the demurrer; whilst it is insisted, on the other hand, that the paper sued on is not a note for money; and in order to make the tender of current hank notes valid, it is indispensable that it should have been made on the day the instrument fell due.
These questions are not entirely free from difficulty, and without a careful examination of the authorities, there is an apparent conflict. But by bearing in mind certain well defined distinctions, we think they can be made to harmonize.
“A promissory note may be defined to be, a written agreement by one person to pay another person therein named, absolutely and unconditionally, a sum of money certain at a time specified therein:” Story on Prom. Notes, ch. 1, sec. 1.
The same author, ch. 1, sec. 17, says : “The instrument, in order to be a valid promissory note, must be for the payment of money, and for the payment of money only.” And, in sec. 18, he says: “ It is upon like ground that it is held essential to a promissory note, that it should be for the payment of money in specie; therefore, a promise to pay a certain sum of money in good East India Bonds, or in cash, or in Bank of England notes, is not a good promissory note.”
In the case of Childress vs. Stewart, it was held, that a note payable in bank bills, is not a note for money: Peck’s Rep., 276.
In the ease of Lawrence vs. Dougherty and Given, “ it was held, that a note for money which may be discharged *262 in cotton, is not for the payment of money, but property:” 5 Yer., 435.
In the case of Gamble vs. Halton and Whyte, it was held, that in an action on a note for $629.00, in current, bank notes, all the plaintiff could recover, in case of the non-payment of the current bank notes, would be as much gold and silver as the bank notes were worth at the time the note fell due, and that current bank notes do not mean gold and silver: Peck’s Rep., 130.
In the case of Kirkpatrick vs. McCullock, it was held, that a note payable in current bank notes, is not a note for money: 3 Hum., 171.
In Whiteman vs. Childress, it was held, that a note for the payment of $920.55, in current bank notes of Tennessee, is not a note for money: 6 Hum., 303.
In Crutchfield vs. Robins, Tingley & Co., it was insisted that bank notes are not money, and that nothing is but that which constitutes a legal tender under the Constitution of the United States; but Judge Turley, in delivering the opinion of the Court, said: “Such is not our opinion. Money is a generic term, and covers everything, which, by consent, is made to represent property, as passes as such currently from hand to hand, whether it be the iron of the Spartan, the cowry of the African, the gold and silver of the world, or the paper of modern Europe and America. Current convertible bank paper has been invariably held, both in Europe and the United States, to be good and legal tender in the payment of debts, unless it be objected to upon the ground that it is not gold and silver:” 5 Hum., 15.
*263 In that case, it was sought to set aside a payment made in current bank notes of the State of Tennessee, by a judgment debtor to the Clerk of the Court, in satisfaction of a judgment; and it was held, the receipt by such officer of current bank paper, is a discharge of the judgment, unless it be objected to before its reception; and the principles of that case were afterwards referred to and approved in the case of Graham vs. The State, decided at the same term: 5 Hum. 40.
The case of Hopson vs. Fountain, 5 Hum., 140, was an action of covenant upon an instrument by which the maker promised to pay Fountain, ninety days after date, in current bank money of the State of Mississippi, the sum of $293.73. Upon the trial in the Circuit Court, the defendant offered to prove the value of Mississippi bank notes at the time the instrument by its terms fell due, but the Court rejected the evidence, and charged the jury that “the criterion of damages was the number of dollars specified in the instrument, with interest thereon; that the word money had a technical legal meaning, signifying dollars and cents of constitutional currency, to-wit, gold and silver.” But this Court said: “We cannot consent to the correctness of the definition of the word money. It is a generic term, embracing, according to the subject matter of the discourse or writing, every species of coin or currency, guilders, guineas, napoleons, eagles and bank notes, as well as dollars;” and it was held, the measure of damages was the value of current Mississippi bank notes, where the covenant was payable; and the judgment of the Circuit Court was reversed.
*264 The case of Baker vs. Jordan, 5 Hum., 485, was an action of covenant upon an instrument by which Baker promised, one day after date, to pay to Jordan $2,821. 27, in current Tennessee hank notes.
The defendants pleaded covenants performed. Upon the trial the plaintiff read the covenant, and this was the only evidence in the cause. The jury found for the plaintiff, $3,170.24; and it was insisted in this Court that the plaintiff was entitled to nominal damages only, because he did not prove the value of Tennessee bank notes at the time the covenant was broken.
Judge Greene, in delivering the opinion of the Court, said: “The words ‘current bank notes,’ mean that which circulate currently as money, and which, in the absence of proof to the contrary, is presumed to be of value equal to money, prima facia it is of such value, and if a defendant in such action is not willing it shall be so considered, he may introduce proof to show that it is of less value.”
In the case of Crutchfield vs. Robins, Tingley & Co., before referred to, the learned Judge says: “ But it may be said, in cases of contracts to pay so many dollars of Tennessee bank notes, it has been held that debt will not lie, and that the contract is not for money. This class of cases are sui juris, and have been determined upon their own peculiar circumstances; they are contracts «made with a view to a depreciation of the paper; they are not contracts for so many dollars of money in general, but for so many of that particular kind of money, and in this respect stand upon somewhat the same footing as contracts to pay *265 so much foreign money, viz: of sovereigns, moidores, rix dollars, or rupees, the value of which is unknown, it depending upon the rate of exchange and usage.”
The necessary consequence of which is that the action upon them sounds in damages, and so the contract to pay bank notes has been held to be a contract to pay so many dollars of that particular money; and inasmuch as it may be worth less than the standard dollar, which it is intended to represent, it is to be scaled, and therefore the action sounds in damages, and debt will not lie, and, as a legal consequence, it is not a contract for the payment of money in numero.
In a still later case, this Court said, in speaking of bank paper: “By almost universal consent, it has become the medium of exchange, and the representative of property. It has taken the place of the precious metals, and is regarded as money. This, however, is by consent, and not by law:” Ware vs. Strut & Co., 2 Head., 609.
In Whiteman vs. Childress, 6 Hum., 303, before referred to, it is said: “The reason why a note payable in current bank notes of Tennessee is not a promissory note, is, because it is not for the payment of money in specie; that is, for the payment of money generally, without limitation or restriction, which, in legal acceptation, would mean gold' and silver;” and to these may now be added legal tender United States Treasury Notes, they having also been made a legal tender for the payment of debts.
It has always been held that the tender of bank notes is good, if not objected to upon that ground; *266 not because they may be as good as gold and silver, or legal tender treasury notes, but because, by almost unanimous consent, they have become the medium of exchange and the representative of property, and are regarded as money; and no objection being made upon the ground that they are bank notes, is an implied admission of willingness to receive payment in such currency, and is a waiver of objection to the currency tendered: 5 Yer., 199; 10 Yer., 141; 3 Hum., 162; 5 Hum., 15; 2 Parsons on Con., 158, note 1; 2 Greenleaf on Ev., sec. 601.
At common law, a tender must, in all cases, be made on the very day the money is due; a tender made after the party has broken his contract being too late, and, therefore, not pleadable in bar of the action. But when the defendant is not in moro, as for example, if no day of payment was agreed upon, and the money has not been demanded, or if amends are to be offered for an involuntary trespass, proof of a tender made at any time before a suit is commenced, is sufficient to support the plea of tender: 2 Greenleaf on Ev., sec. 607; 2 Parsons on Con., 153-4.
It seems, however, that the Statutes, and usages of our States generally, permit the tender to be made after the day the money is due, but before the action is brought, and in some, it may be made after the action is brought.
If the tender be of money, it can be a defense only when made before the action is brought, and when the demand is of money, and is definite in amount, or is capable of being made so. It has generally been held *267 in England, very strongly, when the claim is for un-liquidated damages, no tender is admissible; but in this country, cases of accidental or involuntary trespass form an exception, in part by usage, or by an extension of the principle of the 21st Jas. 1, ch. 16, or express statutory provisions: 2 Parsons on Con., 148, 149.
Erom these authorities we think the following propositions clearly deducible:
1st, The note sued on in this case, is not a note for money generally, but for a particular kind of money.
2d, Inasmuch as the demand is of a particular kind of money, which may, owing to the depreciation, be worth less than the standard dollar which it is intended to represent, it is to be scaled, and the plaintiff is entitled to recover, upon breach of the contract, in money generally, only the value of $471.79, in current bank notes.
3d, The amount to which the plaintiff was entitled after the breach of the contract, was not only indefinite, but incapable of being made definite, and in consequence of a breach of the contract the defendant was in moro, therefore no tender was admissible after the breach.
It follows, therefore, the plea of tender in this case is bad, and the plaintiff’s demurrer thereto is well taken, and must be allowed.
But the judgment by default, and all subsequent proceedings thereon, was erroneous. The defendant had filed two pleas, and upon the first the plaintiff had taken issue. The defendants are, therefore, not in de *268 fault, and the plaintiff was not entitled to a judgment by default.
The judgment must be reversed, and the cause remanded for a trial upon the issue.